UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

**CIVIL ACTION NO. 16-100-DLB-CJS**

**RUSSELL D. GENTRY**                                                                                    **PLAINTIFF**

**v.**                              **MEMORANDUM OPINION AND ORDER**

**JERRY M. MEAD and XERIUX, INC.**                                                **DEFENDANTS**

\* \*   \* \*   \* \*   \* \*   \* \*   \* \*   \* \*   \* \*

This matter is before the Court on Defendants Jerry Mead and Xeriux, Inc.'s Motion to Dismiss.  (Doc. # 5).  Plaintiff Russell Gentry having filed his Response (Doc. # 6) and Defendants having filed their Reply (Doc. # 7), this matter is ripe for review.  Having reviewed the parties' briefing, and the Court being otherwise sufficiently advised, Defendants' Motion to Dismiss will be **granted in part and denied in part** for the reasons stated herein.

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

On March 18, 2016, Defendant Jerry Mead signed a promissory note ("the Note") in which he "and/or" Xeriux, Inc. promised to pay Plaintiff Russell Gentry $370,000.  (Doc. # 1-1 at ¶ 1 and p. 5).  Xeriux, Inc. is a Nevada corporation.  *Id.* at ¶ 2.  Gentry previously served as Xeriux's President.  *Id.*  Mead was, and still is, Xeriux's Chief Executive Officer.  *Id.* at ¶ 3.  Gentry contends that while he was president, Xeriux maintained its principal office and corporate headquarters in Boone County, Kentucky, and that he worked for Xeriux through that office.  *Id.* at ¶ 2.

1

The Note was executed as part of Mead's agreement to purchase Gentry's interest in Xeriux.  (Doc. # 6, p. 2).  Mead did not travel to Kentucky to negotiate or to execute the Note.  *Id.* at p. 3.  In March 2016, Mead paid an initial installment of $50,000 as required by the terms of to the Note.  (Doc. # 1-1 at ¶ 4).  In April 2016, Mead and Xeriux paid only $26,666 on the installment, instead of the $53,333 due.  *Id.* at ¶ 5.  Pursuant to the terms of the Note, Gentry declared the total outstanding balance of the Note immediately due and payable.  *Id.* at ¶¶ 6-7.

The Note contains a choice-of-law provision, which provides that the "terms of this Note and the collection hereof, shall be in [sic] governed in accordance with the laws of the State of Kentucky; Boone County."  *Id.* at ¶ 12.  Gentry filed his complaint in Boone County Circuit Court.  (Doc. # 1-1).  Defendants removed the action to this Court (Doc. # 1) and subsequently filed their Motion to Dismiss (Doc. # 5).

**II.    ANALYSIS**

**A.    Standard of Review**

When a defendant brings a Rule 12(b)(2) motion, the burden is on the plaintiff to establish personal jurisdiction.  *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991).  The plaintiff cannot meet his burden by simply pointing to the pleadings, "but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Id.* A court views the pleadings in the light most favorable to the plaintiff and "does not weigh the controverting assertions of the party seeking dismissal." *Id.* at 1459.  When the court has not conducted an evidentiary hearing, a plaintiff need only make a *prima facie* showing of personal jurisdiction, *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002), making his burden "relatively slight." *Estate of Thomson v. Toyota Motor Corp.*

2

*Worldwide*, 545 F.3d 357, 360 (6th Cir. 2008).

### B.     Forum-Selection Clause

Under Kentucky law, if a contract does not contain ambiguities, it "will be strictly enforced according to its terms." *Mounts v. Roberts*, 388 S.W.2d 117, 119 (Ky. 1965). The terms of a contract are ambiguous if they are subject to more than one reasonable interpretation. *Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.*, 94 S.W.3d 381, 385 (Ky. Ct. App. 2002). "The fact that one party may have intended different results, however, is insufficient to construe a contract at variance with its plain and unambiguous terms." *Id.* (citing *Green v. McGrath*, 662 F.Supp. 337, 342 (E.D. Ky. 1986)).

Gentry contends that the Note's choice-of-law clause should also be construed as a forum-selection clause. The relevant provision of the Note states that the "terms of this Note and the collection hereof, shall be in [sic] governed in accordance with the laws of the State of Kentucky; Boone County." (Doc. # 1-1 at ¶ 12). Gentry argues that the inclusion of "Boone County" renders the clause ambiguous, because County laws would not govern the terms of the Note. Thus, according to Gentry, the inclusion of "Boone County" is evidence of the parties' intent that Boone County should have jurisdiction over any dispute arising from the terms of the Note. Gentry's argument is without merit.

The terms of the Note are unambiguous. The clause provides which laws shall govern the Note, but says nothing about forum. The inclusion of "Boone County" does not create an ambiguity; it leads only to the interpretation that Boone County laws govern the Note. There is no reason to believe that Boone County laws would not have any place in governing the Note. Therefore, the Note is unambiguous.

Gentry seeks to introduce extrinsic evidence as proof that the parties intended to consent to jurisdiction in Kentucky. However, when the terms of a contract are unambiguous, "a court will interpret the contract's terms by assigning language its ordinary meaning and without resort to extrinsic evidence." *Frear v. P.T.A. Industries, Inc.*, 103 S.W.3d 99, 106 (Ky. Ct. App. 2003).

In *Frear*, the Kentucky Court of Appeals rejected the plaintiff's argument that the defendant was required to indemnify plaintiff when the terms of the agreement called only for "release." *Id.* The Court found that while "release" and "indemnity" were related, they were nevertheless distinct legal concepts, and refused to entertain any parol evidence regarding the parties' intent. *Id.* at 107. Similarly, while forum-selection and choice-of-law may be related, they are distinct concepts. The terms of the Note speak only to choice-of-law, and the Court will not consider extrinsic evidence to the contrary. Accordingly, Defendants did not consent to this forum, and the Court will proceed to analyze whether it has personal jurisdiction over Defendants pursuant to Kentucky's long-arm statute and federal due process.

### C.     Long-arm Jurisdiction in Kentucky

"A federal court sitting in diversity may exercise personal jurisdiction over an out-of-state defendant only to the extent that a court of the forum state could do so." *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 148 (6th Cir. 1997). In Kentucky, the issue of long-arm jurisdiction is governed by a two-step process. First, review must proceed under KRS 454.210 to determine if the cause of action arises from conduct or activity of the defendant that fits into one of the statute's enumerated categories. If not, then *in personam jurisdiction* may not be exercised. When that initial step results in a determination that the

statute is applicable, a second step of analysis must be taken to determine if exercising personal jurisdiction over the non-resident defendant offends his federal due process rights. *Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51, 57 (Ky. 2011).[1]

With respect to step one, the nine subsections in KRS 454.210(2)(a) each describe a generic scenario in which a Kentucky court may exercise jurisdiction over a nonresident defendant. The statute also provides that "[w]hen jurisdiction over a person is based solely upon this section, only a claim *arising from* acts enumerated in this section may be asserted against him." KRS 454.210(2)(b) (emphasis added). Thus, a Kentucky court may not exercise jurisdiction "simply because [the non-resident defendant] has engaged in conduct or activity that fits within one or more subsections of KRS 454.210(2)(a). The plaintiff must also show that his claim is one that arises from the conduct or activities described in the subsection." *Id.* at 55.

### 1. Mead

Gentry contends that Mead personally transacted business in Kentucky by entering into the Note with Gentry. *Id.* at 11. Kentucky's long-arm statute provides that Kentucky courts may exercise jurisdiction over a person who transacts business within the Commonwealth. KRS 454.210(2)(a)(1) There is little case law interpreting the meaning of "transacting business" as used in KRS 454.210 following *Caesars*, but, "even before *Caesar's* narrowed the scope of Kentucky's long arm statute, Kentucky courts have

---

[1] Until 2011, Kentucky's long-arm statute was interpreted as reaching the outer limits of federal due process, thus collapsing the above two-step process into a single, constitutional inquiry. *Caesars*, 336 S.W.3d at 55-56. In *Caesars*, the court restored the independent significance of Kentucky's long-arm statute, declaring that it must be satisfied as an "initial step." *Id.* at 57. Thus, if a plaintiff is unable to satisfy KRS 454.210, the court may not assert jurisdiction over the nonresident defendant, regardless of whether doing so would comport with federal due process.

required a course of direct, affirmative actions within a forum that result in or solicit a business transaction." *Modern Holdings, LLC v. Corning, Inc.*, No. 13-CV-405, 2015 WL 1481443, at *6 (E.D. Ky. Mar. 31, 2015). "Isolated contracts" are not sufficient to establish jurisdiction. *Id.* (citing *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 722 (6th Cir. 2000)).

Entering into a Note, by itself, does not establish the minimum contacts needed for jurisdiction. Gentry acknowledges that Mead never traveled to Kentucky, and he does not allege that the Note was executed in Kentucky. Mead's only contact with Kentucky was in entering into the Note with Gentry, who resided there. This single contract, having no future consequence in Kentucky, does not rise to the level of "transacting business" within the Commonwealth. Therefore, Mead's contacts are insufficient to establish jurisdiction.

### 2. Xeriux

Gentry contends that Xeriux transacted business in Kentucky because it established an office in Kentucky, its President, Gentry, conducted business out of that office, and it paid Gentry for his work in Kentucky. (Doc. # 6, p. 9). Xeriux was also a party to the Note at issue.

Unlike Mead, Xeriux's activities in Kentucky meet the definition of "transacting business" as used in KRS 454.210. Actions such as leasing office space, hiring an employee, and executing contracts fit squarely within the ordinary meaning of transacting business, and all of those actions were completed within the Commonwealth. Although entering into the Note alone would be insufficient, jurisdiction is established when that action is considered in combination with Xeriux's other actions in Kentucky. Thus, the Court will proceed to the second step of the analysis under Kentucky's long-arm statute: whether the current action arose from Xeriux's business transactions in Kentucky.

A claim arises from conduct when there is a "reasonable and direct nexus between the conduct causing injury and the defendant's activities in the state." *Modern Holdings*, 2015 WL 1481443, at *6; *Caesars*, 336 S.W.3d at 59. Xeriux transacted business within the Commonwealth, and entering into the Note was part of that business. There is a reasonable and direct nexus between entering into the Note and failing to make payments on the Note. Thus, Xeriux is subject to jurisdiction under Kentucky's long-arm statute, because the action arises from Xeriux's failure to make payments under the Note. Accordingly, the Court will move to the second step of the jurisdictional analysis to determine whether subjecting Xeriux to jurisdiction in Kentucky violates its federal due process rights.

### D. Federal Due Process

Gentry asserts that Xeriux and Mead are subject to specific jurisdiction. A specific-jurisdiction analysis involves a three-part test. First, defendants must have purposefully availed themselves of the privilege of acting in the forum state or causing a consequence there. *Aristech Chemical Intern. Ltd. v. Acrylic Fabricators Ltd.*, 138 F.3d 624, 628 (6th Cir. 1998). Second, the cause of action must arise from defendants' activities there. *Id.* Third, defendants' acts must have a substantial enough connection with the forum state to make the exercise of jurisdiction over them reasonable. *Id.*

#### 1. Purposeful Availment

Purposeful availment "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts." *Burger King Corp. v. Rudzewica*, 471 U.S. 462, 475 (1985) (quotation marks and citations omitted). Purposeful

7

availment is present when a defendant creates a "substantial connection" with the forum state such that he "should reasonably anticipate being haled into court there." *Id.* at 474-75 (citations omitted).

### a. Mead

Even if Mead was subject to jurisdiction under KRS 454.210, exercising jurisdiction over him in Kentucky would violate his federal due process rights. Mead did not purposefully avail himself of jurisdiction in Kentucky. His sole contact with the state was the execution of the Note payable to a Kentucky resident. This is not the type of "substantial connection" that would give Mead the reasonable anticipation of being haled into court there.

Gentry attempts to compare this case to ones in which courts found personal jurisdiction over out-of-state defendants who signed agreements "to induce a loan of money to be invested in a Kentucky business." *KFC Corp. v. Tex. Petroplex, Inc.*, No. 3:11-CV-00479, 2012 WL 4760848, at *9 (W.D. Ky. Oct. 4, 2012); *Nat'l Can Corp. v. K Beverage Co.*, 674 F.2d 1134, 1138 (6th Cir. 1982). Mead argues that this case is distinguishable, because the Note here did not fund a Kentucky business. *See KFC Corp. v. Wagstaff*, 502 B.R. 484, 495 (W.D. Ky. 2013) (declining to exercise jurisdiction where a note called for payments to Kentucky resident, but did not fund future Kentucky business activities).

According to the Sixth Circuit, a defendant has acted in a state "when obligations created by the defendant or business operations set in motion by the defendant have a realistic impact on the commerce of that state." *In Flight Devices Corp. v. Van Deusen Air., Inc.*, 466 F.2d 220, 226 (6th Cir. 1972) (overruled in part on other grounds). Minimum

contacts are not established on the sole basis of a contract between a resident and non-resident. *See Burger King*, 471 U.S. at 478. Here, Mead was not investing money into a Kentucky business. Rather, his agreement to pay Gentry had the opposite effect of severing Gentry's relationship with Xeriux. Mead's only contact with Kentucky was in making payments to a Kentucky resident. Those payments had no other future consequence in Kentucky, and did not impact commerce in the state. Such minimal contact is not enough to establish purposeful availment. Therefore, Kentucky courts may not exercise jurisdiction over him.[2]

### b.     Xeriux

However, the purposeful availment factor is satisfied with respect to Xeriux. While entering into the Note alone would be insufficient to sustain personal jurisdiction in Kentucky, Xeriux had additional contacts with the state. The Note must be considered along with Xeriux's other contacts. *Neogen Corp.*, 282 F.3d at 891. Xeriux leased office space in the state, paid Gentry to conduct business out of that space, *and* entered into the Note with Gentry. These actions, taken together, created a substantial connection between Xeriux and Kentucky such that Xeriux should have reasonably anticipated being subject to jurisdiction there.

Further, the Note that Xeriux entered into stated that Kentucky law would govern. While a choice-of-law clause alone does not establish jurisdiction, it can "reinforce[] [a party's] deliberate affiliation with the forum State and the reasonable foreseeability of possible litigation there." *Burger King*, 471 U.S. at 482. Accordingly, Gentry has

---

[2] Because this Court lacks personal jurisdiction over Mead, it need not address whether Gentry has stated a claim under Rule 12(b)(6).

established a *prima facie* case that Xeriux purposefully availed itself of the privilege of acting in the Commonwealth. Thus, the Court will proceed to consider whether the current action arises from Xeriux's contacts with Kentucky.

### 2. Arising Out Of

The "arising out of" step is also satisfied with respect to Xeriux. This step requires "that the cause of action ... have a substantial connection with the defendant's in-state activities." *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 384 n.27 (6th Cir. 1968). In other words, "[o]nly when the operative facts of the controversy are not related to the defendant's contact with the state can it be said that the cause of action does not arise from that [contact]." *Id.* at n.29.

Xeriux claims that the current action does not arise from its prior contact with Kentucky. It contends that its only contact was leasing office space and employing Gentry to work out of that space, and that entering into the Note was an unrelated, minimal contact. Consequently, according to Xeriux, the action does not arise from Xeriux's contacts with Kentucky. However, as discussed *supra* in the analysis surrounding Kentucky's long-arm statute, the present action does arise from Xeriux's contacts with Kentucky. Xeriux had several contacts with Kentucky, one of which was entering into the Note with Gentry. This action arises from Xeriux's default on the Note, which has a direct and substantial connection to Xeriux's activities in Kentucky.

### 3. Substantial Connection

If the first two factors are met, there is an inference that the third factor is satisfied. *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1268 (6th Cir. 1996). The factors relevant to the reasonableness inquiry include "the burden on the defendant, the interest of the

forum state, the plaintiff's interest in obtaining relief, and the interest of the other states in securing the most efficient resolution of controversies." *Id.* (citations omitted).

Here, defendants have not challenged the reasonableness of jurisdiction in Kentucky. Because Kentucky has a strong interest in ensuring that its citizens have access to its courts, and defendants have not raised any burdens on their part, the Court finds that this factor is satisfied. Accordingly, Xeriux is subject to personal jurisdiction in this Court.

### III.   CONCLUSION

Accordingly, for the reasons stated herein,

**IT IS ORDERED** that Defendants' Motion to Dismiss (Doc. # 5) is hereby **GRANTED** as to Defendant Jerry M. Mead, and **DENIED** as to Defendant Xeriux, Inc.

This 21st day of November, 2016.

Signed By:
*David L. Bunning*   DB
United States District Judge

K:\DATA\ORDERS\Cov16\16-100 MTD MOO.wpd